UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC | § § § § | |
| **PLAINTIFFS** | § | |
| v. | § | **Civil Action No. 2:13-cv-896** |
| | § | |
| HUAWEI INVESTMENT & HOLDING CO., LTD., HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE (HONG KONG) CO., LTD, HUAWEI TECHNOLOGIES USA, INC., HUAWEI DEVICE USA INC., HUAWEI TECHNOLOGIES COOPERATIEF U.A., and FUTUREWEI TECHNOLOGIES, INC. | § § § § § | **JURY TRIAL REQUESTED** |
| **DEFENDANTS.** | | |

**PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S ORIGINAL COMPLAINT**

Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar") file this Original Complaint for patent infringement under 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

**PARTIES**

1.     Plaintiff Rockstar Consortium US LP ("Rockstar") is a limited partnership organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

2.      Plaintiff MobileStar Technologies LLC ("MobileStar") is a subsidiary of Rockstar and is a limited liability corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

3.      Upon information and belief, Defendant Huawei Investment & Holding Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Bantian, Longgan District, Shenzhen, 518129, China.

4.      Upon information and belief, Defendant Huawei Technologies Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Bantian, Longgan District, Shenzhen, 518129, China, and is a subsidiary of Defendant Huawei Investment & Holding Co., Ltd.

5.      Upon information and belief, Defendant Huawei Device (Hong Kong) Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Bantian, Longgan District, Shenzhen, 518129, China, and is a subsidiary of Defendant Huawei Technologies Co., Ltd.

6.      Upon information and belief, Defendant Huawei Technologies USA, Inc. is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024, and is a subsidiary of Huawei Technologies Coöperatief U.A.

7.      Upon information and belief, Defendant Huawei Device USA Inc. is a corporation organized and existing under the laws of the State of Texas with a principal

place of business at 5700 Tennyson Parkway, Suite #600 Plano, Texas 75024, and is a subsidiary of Defendant Huawei Device (Hong Kong) Co., Ltd.

8.     Upon information and belief, Defendant Huawei Technologies Coöperatief U.A. is a corporation organized and existing under the laws of the Netherlands with a principal place of business at Karspeldreef 4, 1101CJ Amsterdam South, Netherlands, and is a subsidiary of Defendant Huawei Technologies Co., Ltd.

9.     Upon information and belief, Defendant Futurewei Technologies Inc. is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024, and is a subsidiary of Defendant Huawei Technologies Coöperatief U.A.

## JURISDICTION AND VENUE

10.     This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

11.     Venue is proper in this Court pursuant to 28 U S.C. §§ 1391 and 1400(b).

12.     This Court has personal jurisdiction over Defendants Huawei Investment & Holding Co., Ltd., Huawei Technologies Co., Ltd., Huawei Device (Hong Kong) Co., Ltd., Huawei Technologies USA, Inc., Huawei Device USA Inc., Huawei Technologies Coöperatief U.A., and Futurewei Technologies Inc. (collectively, "Huawei"). Huawei has conducted and does conduct business within the State of Texas.  Huawei, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its infringing products) and/or services in the United

3

States, the State of Texas, and the Eastern District of Texas.  Huawei, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Huawei has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## ASSERTED PATENTS

13.     On November 17, 1998, U.S. Patent No. 5,838,551 ("the '551 Patent") entitled "Electronic Package Carrying an Electronic Component and Assembly of Mother Board and Electronic Package" was duly and legally issued with Yee-Ning Chan as the named inventor after full and fair examination.  Rockstar owns all rights, title, and interest in and to the '551 Patent and possesses all rights of recovery under the '551 Patent.  MobileStar is the exclusive licensee under the '551 Patent.

14.     On March 14, 2000, U.S. Patent No. 6,037,937 ("the '937 Patent") entitled "Navigation Tool for Graphical User Interface" was duly and legally issued with Brian Finlay Beaton, Colin Donald Smith, and Bruce Dale Stalkie as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '937 Patent and possesses all rights of recovery under the '937 Patent.

15.     On October 3, 2000, U.S. Patent No. 6,128,298 ("the '298 Patent") entitled "Internet Protocol Filter" was duly and legally issued with Bruce Anthony

4

Wootton and William G. Colvin as the named inventors after full and fair examination. Rockstar owns all rights, title, and interest in and to the '298 Patent and possesses all rights of recovery under the '298 Patent.  MobileStar is the exclusive licensee under the '298 Patent.

16.     On December 25, 2001, U.S. Patent No. 6,333,973 ("the '973 Patent") entitled "Integrated Message Center" was duly and legally issued with Colin Donald Smith and Brian Finlay Beaton as the named inventors after full and fair examination. MobileStar owns all rights, title, and interest in and to the '973 Patent and possesses all rights of recovery under the '973 Patent.

17.     On October 8, 2002, U.S. Patent No. 6,463,131 ("the '131 Patent") entitled "System and Method for Notifying a User of an Incoming Communication Event" was duly and legally issued with Marilyn French-St. George, Mitch A. Brisebois and Laura A. Mahan as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '131 Patent and possesses all rights of recovery under the '131 Patent.

18.     On July 20, 2004, U.S. Patent No. 6,765,591 ("the '591 Patent") entitled "Managing a Virtual Private Network" was duly and legally issued with Matthew W. Poisson, Melissa L. Desroches, and James M. Milillo as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '591 Patent and possesses all rights of recovery under the '591 Patent.

19.     On August 30, 2005, U.S. Patent No. 6,937,572 ("the '572 Patent") entitled "Call Trace on a Packet Switched Network" was duly and legally issued with Brian B. Egan and Milos Vodsedalek as the named inventors after full and fair

5

examination.  Rockstar owns all rights, title, and interest in and to the '572 Patent and possesses all rights of recovery under the '572 Patent.

## **GENERAL ALLEGATIONS**

20.     Huawei has infringed and continues to infringe each of the '551, '937, '298, '973, '131, '591, and '572 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(b), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain mobile communication devices having a version (or an adaption thereof) of Android operating system ("Huawei Mobile Communication Devices").

21.     Huawei is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or offering for sale Huawei Mobile Communication Devices, including but not limited to Huawei's family of smart phones, including but not limited to the Huawei M865 MUVE, Huawei Ascend II, and Huawei Premia 4G M931, and Huawei's family of tablets, including but not limited to the Huawei MediaPad and Huawei IDEOS S7 Slim, and other products that infringe the patent claims involved in this action or by transacting other business in this District.

### **COUNT ONE**
### **PATENT INFRINGEMENT BY HUAWEI**

22.     Plaintiffs incorporate by reference paragraphs 1-21 as if fully set forth herein.  As described below, Huawei has infringed and/or continues to infringe the '551, '937, '298, '973, '131, '591, and '572 Patents.

McKool 940051v2

23.     At least the Huawei Mobile Communication Devices, including the Huawei Premia 4G M931, infringe at least claim 1 of the '551 Patent.  Huawei makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these products and thus directly infringes one or more claims of the '551 Patent, including at least claim 1.

24.     Huawei indirectly infringes the '551 patent by inducing infringement by others, such as resellers, of at least claim 1, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices, including the Huawei Premia 4G M931.  Huawei had actual notice of the '551 Patent at least by September 11, 2013, in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

25.     Huawei's affirmative acts of selling Huawei Mobile Communication Devices, including the Huawei Premia 4G M931, causing the Huawei Mobile Communication Devices to be manufactured and distributed, and providing instruction manuals for Huawei Mobile Communication Devices induced Huawei's manufacturers and resellers to make or use Huawei Mobile Communication Devices in their normal and customary way to infringe the '551 patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '551 patent; further, Huawei was aware that these normal and customary activities would infringe the '551 patent.  Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with the

knowledge of the '551 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

26.     Accordingly, a reasonable inference is that Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '551 Patent in the United States because Huawei has knowledge of the '551 Patent and Huawei actually induces others, such as resellers and end-use customers, to directly infringe the '551 patent, by using, by selling, exporting, supplying and/or distributing within the United States, Huawei Mobile Communication Devices for resale to others, such as resellers and end-use customers.  Huawei knew or should have known that such actions would induce actual infringement.

27.     Huawei indirectly infringes the '551 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices.  Huawei had actual notice of the '551 Patent at least by September 11, 2013, in view of a Rockstar communication to Huawei.

28.     Huawei Mobile Communication Devices, including the Huawei Premia 4G M931, include at least one electronic package comprising a component that is located between an EMI shield and a ground member for performing shielding operations.  The EMI shield is incorporated into the electronic package, which is then mounted to a circuit board in Huawei Mobile Communication Devices, and on information and belief, the electronic component does not function in an acceptable manner absent the EMI shielding.  Furthermore, the electronic package incorporating the EMI shield does not

8

operate in isolation, but is designed to operate within the Mobile Communication Device, and absent the EMI shielding of the electronic component, Huawei Mobile Communication Devices would not function in an acceptable manner.

29.    A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package in Huawei Mobile Communication Devices, including the Huawei Premia 4G M931, is especially made or especially adapted to operate in a Huawei Mobile Communication Device as an EMI shield.

30.    A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package is not a staple article or commodity of commerce and that the use of the EMI shielded electronic package is required for operation of Huawei Mobile Communication Devices, including the Huawei Premia 4G M931.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

31.    The EMI shielded electronic package in Huawei Mobile Communication Devices, including the Huawei Premia 4G M931, are each a material part of the invention of the '551 patent and are especially made for the infringing manufacture, sale, and use of Huawei Mobile Communication Devices.   Huawei Mobile Communication Devices, including the EMI shielded electronic package, are especially made or adapted as an electronic package that infringes the '551 patent.  Because the sales and manufacture of Huawei Mobile Communication Devices including the EMI shielded electronic package infringe the '551 patent, Huawei's sales of its infringing products have no substantial non-infringing uses.

32.    Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination,

or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Huawei provides to others Huawei Mobile Communication Devices, including the Huawei Premia 4G M931, with distinct and separate components, including hardware components, which have no substantial non-infringing use.

33.     At least Huawei Mobile Communication Devices, including the Huawei M865 MUVE, with an operating system configured and installed by Huawei to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent.  Huawei makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 13 of the '937 Patent.

34.     Huawei indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices.  Huawei received actual notice of the '937 Patent at least by March 12, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to Huawei.

35.     Huawei's affirmative acts of selling Huawei Mobile Communication Devices, causing the Huawei Mobile Communication Devices to be manufactured, and providing instruction manuals for Huawei Mobile Communication Devices induced

Huawei's manufacturers and resellers to make or use the Huawei Mobile Communication Devices in their normal and customary way to infringe the '937 patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '937 patent; further, Huawei was aware that these normal and customary activities would infringe the '937 patent.  Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

36.     Accordingly, a reasonable inference is that Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because Huawei has knowledge of the '937 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Huawei Communication Devices for resale to others, such as resellers and end-use customers.  Huawei knew or should have known that such actions would induce actual infringement.

37.     The use of at least Huawei Mobile Communication Devices, including the Huawei M865 MUVE, with an operating system configured and installed by Huawei to support Gallery, Email, Maps and Browser functionality as intended by Huawei infringes at least method claim 1 of the '937 Patent.  Huawei uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

38.     In addition, Huawei provides at least Huawei Mobile Communication Devices, including the Huawei M865 MUVE, with an operating system configured and

installed by Huawei to support Gallery, Email, Maps, and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

39.     Huawei indirectly infringes the '937 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices, including the Huawei M865 MUVE.  Huawei received actual notice of the '937 Patent at least by March 12, 2012, in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

40.     Huawei provides at least Huawei Mobile Communication Devices, including the Huawei M865 MUVE, with an operating system configured and installed by Huawei to support Gallery, Email, Maps and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe the '937 Patent.   Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '937 patent.

41.     Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 Patent in the United States. For example, Huawei provides instructions to resellers and end-use customers regarding the use and operation of Huawei's products in an infringing way.   Such instructions include, for example, at least the M865 MUVE user guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile

12

&flay=document&softid=NDI4OTk=) (accessed October 30, 2013). When resellers and end-use customers follow such instructions, they directly infringe the '937 Patent. Huawei knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '937 Patent. Huawei thus knows that its actions induce the infringement.

42. Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

43. Huawei indirectly infringes the '937 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices including the Huawei M865 MUVE. Huawei received actual notice of the '937 Patent at least by March 12, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei, and also received knowledge as of the date this lawsuit was filed.

44. Huawei Mobile Communication Devices, including the Huawei M865 MUVE, include functionality that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real estate. This navigable GUI is included in Huawei Mobile Communication Devices with an operating system configured and installed by Huawei to support at least the Gallery, Email, Maps, and Browser functionalities. On information and belief, these functionalities cannot operate in an

13

acceptable manner absent the navigable GUI, as it is included in every Huawei Mobile Communication Device.

45.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in Huawei Mobile Communication Devices, including the Huawei M865 MUVE, is especially made or especially adapted to operate on a Huawei Mobile Communication Device as a navigable GUI that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's Huawei Mobile Communication Devices.

46.     A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the navigable GUI in Huawei Mobile Communication Devices is required for the operation of Huawei Mobile Communication Devices, including the Huawei M865 MUVE.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

47.     Huawei Mobile Communication Devices, including the Huawei M865 MUVE, with the navigable GUI are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of Huawei Mobile Communication Devices.  Huawei Mobile Communication Devices with the navigable GUI are especially made or adapted as a navigable GUI that infringes the '937 patent.  Because the sales and manufacture of Huawei Mobile Communication Devices with a navigable GUI infringes the '937 patent, Huawei's sales of its infringing products have no substantial non-infringing uses.

48.     Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '937 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Huawei provides to others Huawei Mobile Communication Devices, including the Huawei M865 MUVE, with distinct and separate components, including software components, which have no substantial non-infringing use.

49.     At least Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, infringe at least claims 27 and 31 of the '298 Patent.  Huawei makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 27 and 31 of the '298 Patent.

50.     Huawei indirectly infringes the '298 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices.  Huawei received actual notice of the 298 Patent at least by July 29, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to Huawei.

51.     Huawei's affirmative acts of selling Huawei Mobile Communication Devices, causing the Huawei Mobile Communication Devices to be manufactured, and

15

providing instruction manuals for Huawei Mobile Communication Devices induced Huawei's manufacturers and resellers to make or use the Huawei Mobile Communication Devices in their normal and customary way to infringe the '298 patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '298 patent; further, Huawei was aware that these normal and customary activities would infringe the '298 patent.  Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

52.     Accordingly, a reasonable inference is that Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 patent in the United States because Huawei has knowledge of the '298 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Huawei Communication Devices for resale to others, such as resellers and end-use customers.  Huawei knew or should have known that such actions would induce actual infringement.

53.     The use of at least Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, that support the Mobile Hotspot functionality as intended by Huawei infringes at least method claims 14 and 24 of the '298 Patent.  Huawei uses these products and thus directly infringes at least method claims 14 and 24 of the '298 Patent.

54.   In addition, Huawei provides at least Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, that support the Mobile Hotspot functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claims 14 and 24 of the '298 Patent.

55.   Huawei indirectly infringes the '298 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the results of occurs by activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, in their intended use, including a customer's use of the Mobile Hotspot functionality.   Huawei received actual notice of the '298 Patent at least by July 29, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

56.   Huawei's affirmative acts of selling its Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, and providing instruction manuals induced the end-users of Huawei Mobile Communication Devices to use Huawei Mobile Communication Devices in their normal and customary way to infringe the '298 patent at least through using Mobile Hotspot functionality.   Huawei also provides instructions, including at least the M865 MUVE user guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDI4OTk=) (accessed October 30, 2013) and the MediaPad User                        Guide                        (available                        at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile

17

&flay=document&softid=NDY2NzQ=) (accessed October 30, 2013) for using the Mobile Hotspot functionality.  Through its sales of Huawei Mobile Communication Devices with Mobile Hotspot functionality, Huawei specifically intended the end-users of Huawei Mobile Communication Devices to infringe the '298 patent; further, Huawei was aware that the normal and customary use of Mobile Hotspot functionality would infringe the '298 patent.  Huawei also enticed its end-users to use the Mobile Hotspot functionality by providing instruction manuals and also providing Mobile Hotspot functionality.  Huawei performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

57.    Accordingly, a reasonable inference is that Huawei actively induces infringement of the '298 Patent by others, such as resellers and end-use customers. Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 Patent in the United States because Huawei had knowledge of the '298 Patent, and Huawei actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Huawei Mobile Communication Devices in an infringing way.  Such instructions include at least the M865 MUVE user guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDI4OTk=) (accessed October 30, 2013) and the MediaPad User Guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDY2NzQ=) (accessed October 30, 2013).  When resellers and

18

end-use customers follow such instructions, they directly infringe the '298 Patent. Huawei knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '298 Patent.  Huawei thus knows that its actions induce the infringement.

58.    Huawei indirectly infringes the '298 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of occurs by activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, in their intended use, including a customer's use of the Mobile Hotspot functionality.  Huawei received actual notice of the '298 Patent at least by July 29, 2012 in view of a Rockstar communication to Huawei.

59.    Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, with the Mobile Hotspot functionality allow wireless devices from a first, or private, network to connect to a second, or public, network such as the Internet.  The Mobile Hotspot functionality is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet, and cannot function in a manner that does not utilize the Mobile Hotspot functionality available to Huawei Mobile Communication Devices.  Upon information and belief, the Mobile Hotspot functionality is designed to entice a user to access nodes in a second, or public, network such as the Internet.

60.    A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is especially made or especially adapted to operate on a

19

mobile communication device for providing access for wireless devices in a first, or private, network to nodes in a second, or public, network.

61.     A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is not a staple article or commodity of commerce and that the use of the Mobile Hotspot functionality of Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, is for interfacing first and second data communications networks, e.g., a private network and a public network such as the Internet.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

62.     Huawei Mobile Communication Devices with Mobile Hotspot functionality, including the Huawei M865 MUVE and Huawei MediaPad, are each a material part of the '298 patent and especially made for the infringing use of the Mobile Hotspot functionality for interfacing private and public data communication networks. Huawei Mobile Communication Devices with the Mobile Hotspot functionality are especially made or adapted to provide access for wireless devices in a first, or private, network through the Mobile Communication Device, to nodes in a second, or public, network that perform or facilitate performance of the steps that infringe the '298 patent. Furthermore, Huawei provides user manuals describing the uses of Huawei Mobile Communication Devices that infringe the '298 patent.   Because the sales and manufacture of Huawei Mobile Communication Devices with Mobile Hotspot functionality infringes the '298 patent, Huawei's sales of its infringement products have no substantial non-infringing uses.

63.     Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Huawei provides to others Huawei Mobile Communication Devices, including the Huawei M865 MUVE and Huawei MediaPad, to support Mobile Hotspot functionality.  Huawei installs and configures Huawei Mobile Communication Devices with distinct and separate components, including software components, which are used only to perform the infringing method claims.

64.     At least Huawei Mobile Communication Devices, including Huawei M865 MUVE, with an operating system configured and installed by Huawei to support an integrated notification message center functionality infringe at least claims 1 and 21 of the '973 Patent.  Huawei makes, uses, sells, tests, uses, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes one or more claims of the '973 patent, including at least claims 1 and 21.

65.     Huawei indirectly infringes the '973 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this

District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices.  Huawei received actual notice of the '973 Patent at least by

21

March 12, 2012 in view of a communication from Rockstar, and/or its predecessors-in-interest, to Huawei.

66.     Huawei's affirmative acts of selling Huawei Mobile Communication Devices, causing the Huawei Mobile Communication Devices to be manufactured, and providing instruction manuals for Huawei Mobile Communication Devices induced Huawei's manufacturers and resellers to make or use the Huawei Mobile Communication Devices in their normal and customary way to infringe the '973 patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '973 patent; further, Huawei was aware that these normal and customary activities would infringe the '973 patent.  Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

67.     Accordingly, a reasonable inference is that Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '973 patent in the United States because Huawei has knowledge of the '973 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Huawei Communication Devices for resale to others, such as resellers and end-use customers.  Huawei knew or should have known that such actions would induce actual infringement.

68.     The use of at least Huawei Mobile Communication Devices, including Huawei M865 MUVE, with an operating system configured and installed by Huawei to

support an integrated notification message center functionality as intended by Huawei infringes at least method claim 8 of the '973 Patent.  Huawei uses these devices within the United States and thus directly infringes one or more claims of the '973 patent, including at least claim 8.

69.     Huawei indirectly infringes the '973 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei M865 MUVE.  Huawei received actual notice of the '973 Patent at least by March 12, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei..

70.     Huawei provides at least Huawei Mobile Communication Devices, including Huawei M865 MUVE, with an operating system configured and installed by Huawei to support integrated notification message center functionality to others, such as resellers and end-use customers, in the United States who, in turn, use Huawei Mobile Communication Devices to infringe at least method claim 8 of the '973 Patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '973 patent.

71.     Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '973 Patent in the United States. For example, Huawei provides instructions to resellers and end-use customers regarding the use and operation of Huawei Mobile Communication Devices, including Huawei M865 MUVE, in an infringing way.  Such instructions include at least Such instructions

23

include, for example, at least the M865 MUVE user guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDI4OTk=) (accessed October 30, 2013). When resellers and end-use customers follow such instructions, they directly infringe the '973 Patent. Huawei knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '973 Patent. Huawei thus knows that its actions induce the infringement.

72. Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '973 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

73. Huawei indirectly infringes the '973 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei M865 MUVE. Huawei received actual notice of the '973 Patent at least by March 12, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

74. Huawei Mobile Communication Devices, including Huawei M865 MUVE, include functionality that, inter alia, displays an integrated notification message center contained in a single list. The notification message center is designed to provide a user with a single list of notifications regardless of the types of messages (e.g., email, text, etc) on the user's Mobile Communication Device. On information and belief, this

24

functionality cannot operate in an acceptable manner absent the integrated notification message center, as it is included in every Huawei Mobile Communication Device.

75.    A reasonable inference to be drawn from the facts set forth is that the integrated message center in Huawei Mobile Communication Devices, including Huawei M865 MUVE, is especially made or especially adapted to operate on a Huawei Mobile Communication Device as an integrated notification message center that provides a user with notifications concerning different types of messages on the user's Mobile Communication Device.

76.    A reasonable inference to be drawn from the facts set forth is that the integrated notification message center in the Mobile Communication Device, including Huawei M865 MUVE, is not a staple article or commodity of commerce and that the use of the integrated notification message center in Huawei Mobile Communication Devices is required for operation of Huawei Mobile Communication Devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

77.    Huawei Mobile Communication Devices, including Huawei M865 MUVE, with the integrated notification message center are each a material part of the invention of the '973 patent and are especially made for the infringing manufacture, sale, and use of Huawei Mobile Communication Devices.  Huawei Mobile Communication Devices, including the integrated notification message center, are especially made or adapted as an integrated notification message center that infringes the '973 patent. Because the sales and manufacture of Huawei Mobile Communication Devices with an

25

integrated notification message center infringes the '973 patent, Huawei's sales of its infringing products have no substantial non-infringing uses.

78.     Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Huawei provides to others Huawei Mobile Communication Devices, including Huawei M865 MUVE, with distinct and separate components, including software components, which have no substantial non-infringing use.

79.     At least Huawei Mobile Communication Devices, including Huawei Ascend II, with an operating system configured and installed by Huawei to support Message and Notification functionality infringe at least claim 1 of the '131 Patent. Huawei makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 1 of the '131 Patent.

80.     Huawei indirectly infringes the '131 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this

District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices.  Huawei received actual notice of the '131 Patent at least by

February 5, 2013 in view of a communication from Rockstar, and/or its predecessors-in-interest, to Huawei.

81.     Huawei's affirmative acts of selling Huawei Mobile Communication Devices, causing the Huawei Mobile Communication Devices to be manufactured, and providing instruction manuals for Huawei Mobile Communication Devices induced Huawei's manufacturers and resellers to make or use the Huawei Mobile Communication Devices in their normal and customary way to infringe the '131 patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '131 patent; further, Huawei was aware that these normal and customary activities would infringe the '131 patent.  Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

82.     Accordingly, a reasonable inference is that Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because Huawei has knowledge of the '131 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Huawei Communication Devices for resale to others, such as resellers and end-use customers.  Huawei knew or should have known that such actions would induce actual infringement.

83.     The use of at least Huawei Mobile Communication Devices, including Huawei Ascend II, with an operating system configured and installed by Huawei to

support Message and Notification functionality as intended by Huawei infringes at least method claim 5 of the '131 Patent.  Huawei uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

84.    In addition, Huawei provides at least Huawei Mobile Communication Devices, including Huawei Ascend II, with an operating system configured and installed by Huawei to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

85.    Huawei indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei Ascend II, in their intended use, including a customer's use of the Message and Notifications functionality.  Huawei received actual notice of the '131 Patent at least by February 5, 2013 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

86.    Huawei's affirmative acts of selling Huawei Mobile Communication Devices, including Huawei Ascend II, and providing instruction manuals induced the end-users of Huawei Mobile Communication Devices, including Huawei Ascend II, to use Huawei Mobile Communication Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality. Huawei also provides instructions, including at least Ascend II user guide (available at http://www.huaweideviceusa.com/downloads/1383178216.44726700_b6405ae24c/M865

28

%20User_Guide%20English.pdf) (accessed October 30, 2013), for using the Messaging and Notifications functionality.  Through its sales of Mobile Communication Devices with Messaging and Notifications functionality, Huawei specifically intended the end-users of Huawei Mobile Communication Devices to infringe the '131 patent; further, Huawei was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent.  Huawei also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals and also providing Messaging and Notifications functionality.  Huawei performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

87. Accordingly, a reasonable inference is that Huawei actively induces infringement of the '131 Patent by others, such as resellers and end-use customers. Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 Patent in the United States because Huawei had knowledge of the '131 Patent, and Huawei actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Huawei Mobile Communication Devices, including Huawei Ascend II, in an infringing way.  Such instructions include at least the Ascend II user guide (available at http://www.huaweideviceusa.com/downloads/1383178216.44726700_b6405ae24c/M865 %20User_Guide%20English.pdf) (accessed October 30, 2013).  When resellers and end-use customers follow such instructions, they directly infringe the '131 Patent.  Huawei knows that by providing such instructions, resellers and end-use customers follow those

29

instructions, and directly infringe the '131 Patent.  Huawei thus knows that its actions induce the infringement.

88.     Huawei indirectly infringes the '131 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei Ascend II, in their intended use, including a customer's use of the Messaging and Notification functionality.  Huawei received actual notice of the '131 Patent at least by February 5, 2013 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

89.     Huawei's Message and Notification functionality receives and displays message of different types, such as a phone call, voice mail, text message, or email.  The Message and Notification Services functionality is designed to notify the user of an incoming communication and to select the format of the message received and cannot function in a manner that does not utilize the messaging functionality available to Huawei Mobile Communication Devices, including Huawei Ascend II.  Upon information and belief, the Message and Notifications functionality is designed to entice a user to receive notifications of an incoming communication.

90.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality especially made or especially adapted to operate on Huawei Mobile Communication Devices, including Huawei Ascend II, for notifying a user of an incoming communication.

91.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the Huawei Mobile Communication Devices, including Huawei Ascend II, is for notifying a user of an incoming communication.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

92.     Huawei Mobile Communication Devices, including Huawei Ascend II, with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and display messages.   Huawei Mobile Communication Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent.   Furthermore, Huawei provides user manuals describing the uses of its Mobile Communication Devices that infringe the '131 patent. Because the functionality provided by Huawei's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, Huawei's sales of its infringing products have no substantial non-infringing uses.

93.     Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Huawei provides to

31

others, Mobile Communication Devices, including Huawei Ascend II, with an operating system configured and installed by Huawei to support Message and Notification functionality.  Huawei installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

94.     At least Huawei Mobile Communication Devices, including Huawei Premia 4G M931, with an operating system configured and installed by Huawei to support VPN management functionality, including the Huawei Premia 4G M931, infringe at least claims 1 and 8 of the '591 Patent.  Huawei makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

95.     The use of at least Huawei Mobile Communication Devices, including Huawei Premia 4G M931, with an operating system configured and installed by Huawei to support VPN management functionality as specified and intended by Huawei infringes at least claims 1 and 8 of the '591 Patent.  Huawei uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

96.     Huawei indirectly infringes the '591 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the Huawei Mobile Communication Devices.  Huawei received actual notice of the 591 Patent at least by April 18, 2013 in view of a communication from Rockstar, and/or its predecessors-in-interest, to Huawei.

32

97.     Huawei's affirmative acts of selling Huawei Mobile Communication Devices, causing the Huawei Mobile Communication Devices to be manufactured, and providing instruction manuals for Huawei Mobile Communication Devices induced Huawei's manufacturers and resellers to make or use the Huawei Mobile Communication Devices in their normal and customary way to infringe the '591 patent.  Through its manufacture and sales of Huawei Mobile Communication Devices, Huawei specifically intended its resellers and manufacturers to infringe the '591 patent; further, Huawei was aware that these normal and customary activities would infringe the '591 patent.  Huawei performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

98.     Accordingly, a reasonable inference is that Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 patent in the United States because Huawei has knowledge of the '591 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, Huawei Communication Devices for resale to others, such as resellers and end-use customers.  Huawei knew or should have known that such actions would induce actual infringement.

99.     In addition, Huawei provides at least its Mobile Communication Devices, including Huawei Premia 4G M931, with an operating system configured and installed by Huawei to support VPN management functionality to others, such as resellers and

end-use customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

100.    Huawei indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei Premia 4G M931, in their intended use, including a customer's use of the VPN management functionality.   Huawei received actual notice of the '591 Patent at least by April 18, 2013 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

101.    Huawei's affirmative acts of selling its Mobile Communication Devices, including Huawei Premia 4G M931, and providing instruction manuals induced the end-users of Huawei Mobile Communication Devices, including Huawei Premia 4G M931, to use Huawei Mobile Communication Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality.   Huawei also provides instructions, including at least the Premia User Guide (available at http://www.huaweideviceusa.com/downloads/1383178470.65582700_d6b1a61435/Premi a%20UG%20En%20Premia.pdf) (accessed October 30, 2013), for using the VPN management functionality.   Through its sales of Huawei Mobile Communication Devices with VPN management functionality, Huawei specifically intended the end-users of Huawei Mobile Communication Devices to infringe the '591 patent; further, Huawei was aware that the normal and customary use of VPN management functionality would infringe the '591 patent.   Huawei also enticed its end-users to use the VPN management

functionality by providing instruction manuals and also providing VPN management functionality.   Huawei performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

102.   Accordingly, it is a reasonable inference that Huawei actively induces infringement of the '591 Patent by others, such as resellers and end-use customers. Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 Patent in the United States because Huawei had knowledge of the '591 Patent, and Huawei actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Huawei's products, including Huawei Premia 4G M931, in an infringing way.   Such instructions include at least the Premia User Guide (available at http://www.huaweideviceusa.com/downloads/1383178470.65582700_d6b1a61435/Premia%20UG%20En%20Premia.pdf) (accessed October 30, 2013).   When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent.   Huawei knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent.   Huawei thus knows that its actions induce the infringement.

103.   Huawei indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei Premia 4G M931, in their

35

intended use, including a customer's use of the VPN management functionality.  Huawei received actual notice of the '591 Patent at least by April 18, 2013 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

104.    Huawei's VPN management functionality facilitates management of VPNs.  The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to Huawei Mobile Communication Devices, including Huawei Premia 4G M931.  The VPN management functionality is designed upon information and belief to entice a user to manage VPNs.

105.    A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on Huawei Mobile Communication Devices, including Huawei Premia 4G M931, for providing VPN management functionality.

106.    A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of Huawei Mobile Communication Devices, including Huawei Premia 4G M931, is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

107.    Huawei Mobile Communication Devices, including Huawei Premia 4G M931, with VPN management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality to receive call trace information.  Huawei Mobile Communication Devices including the VPN management functionality, are especially made or adapted to provide VPN

36

management functionality that perform or facilitate performance of the steps that infringe the '591 patent.  Furthermore, Huawei provides user manuals describing the uses of its Mobile Communication Devices that infringe the '591 patent.  Because the functionality provided by Huawei's VPN management functionality infringes the '591 patent, Huawei's sales of its infringing Mobile Communication Devices have no substantial non-infringing uses.

108.    Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Huawei provides to others, Mobile Communication Devices, including Huawei Premia 4G M931, with an operating system configured and installed by Huawei to support VPN management functionality.  Huawei installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

109.    The use of at least Huawei Mobile Communication Devices, including the Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, with an operating system configured and installed by Huawei to support Location Services functionality, as intended by Huawei infringes at least method claim 17 of the '572 Patent.  Huawei uses these Mobile Communication Devices and thus directly infringes at least method claim 17 of the '572 Patent.

McKool 940051v2

110.     In addition, Huawei provides at least its Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, with an operating system configured and installed by Huawei to support Location Services functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 17 of the '572 Patent.

111.     Huawei indirectly infringes the '572 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of Huawei Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, in their intended use, including a customer's use of the Location Services functionality.   Huawei received actual notice of the '572 Patent at least by August, 10, 2012 in view of a communication from Rockstar and/or its predecessors-in-interest to Huawei.

112.     Huawei's affirmative acts of selling its Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, and providing instruction manuals induced the end-users of Huawei Mobile Communication Devices to use Huawei Mobile Communication Devices in their normal and customary way to infringe the '572 patent at least through using Location Services functionality. Huawei also provides instructions, including at least the M865 MUVE user guide (available                                                                                          at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDI4OTk=) (accessed October 30, 2013), the MediaPad User

38

Guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDY2NzQ=) (accessed October 30, 2013), and the IDEOS S7 Slim User Guide (available at http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile &flay=document&softid=NDA0NjY=) (accessed October 30, 2013)  for using the Location Services functionality.  Through its sales of Huawei Mobile Communication Devices with Location Services functionality, Huawei specifically intended the end-users of Huawei Mobile Communication Devices to infringe the '572 patent; further, Huawei was aware that the normal and customary use of Location Services would infringe the '572 patent.  Huawei also enticed its end-users to use the Location Services by providing instruction manuals and also providing Location Services functionality.   Huawei performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '572 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

113.   Accordingly, a reasonable inference is that Huawei actively induces infringement of the '572 Patent by others, such as resellers and end-use customers. Huawei specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '572 Patent in the United States because Huawei had knowledge of the '572 Patent, and Huawei actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of Huawei's products, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, in an infringing way.  Such instructions include at least "Huawei Score

39

User                     Manual"                     (available                     at
http://www.Huaweiusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_
Manual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013) and "Huawei
Optik User Guide" (available at http://www.Huaweiusa.com/media/wysiwyg//Huawei-
Optik/Huawei_Optik_User_Manual_English_-_PDF_-_2.98MB_.pdf) (accessed October
30,     2013)     "Huawei     Score     User     Manual"     (available     at
http://www.Huaweiusa.com/media/wysiwyg/CricketScoreTM/Cricket_Score_TM_User_
Manual_English_-_PDF_-_968KB_.pdf) (accessed October 30, 2013) and "Huawei
Optik User Guide" (available at http://www.Huaweiusa.com/media/wysiwyg//Huawei-
Optik/Huawei_Optik_User_Manual_English_-_PDF_-_2.98MB_.pdf) (accessed October
30, 2013).  When resellers and end-use customers follow such instructions, they directly
infringe the '572 Patent.  Huawei knows that by providing such instructions, resellers and
end-use customers follow those instructions, and directly infringe the '572 Patent.
Huawei thus knows that its actions induce the infringement.

114.    Huawei indirectly infringes the '572 Patent by contributing to
infringement by others, such as resellers and end-use customers, in accordance with 35
U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is
the result of activities performed by the manufacturers, resellers, and end-users of
Huawei Mobile Communication Devices, including Huawei M865 MUVE, Huawei
MediaPad, and Huawei IDEOS S7 Slim, in their intended use, including a customer's use
of the Locations Services functionality.  Huawei received actual notice of the '572 Patent
at least by August 10, 2012 in view of a communication from Rockstar and/or its
predecessors-in-interest to Huawei.

40

115.    Huawei's Location Services functionality provides call trace information, i.e., a geographic location of Huawei Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim.  The Location Services functionality is designed to notify the user of Huawei Mobile Communication Devices of call trace information, i.e., a geographic location of the Mobile Communication Devices, and cannot function in a manner that does not utilize the Location Services functionality available to the Mobile Communication Devices.  Upon information and belief, the Location Services functionality is designed to entice a user to access call trace information.

116.    A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is especially made or especially adapted to operate on Huawei Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, for obtaining call trace information, i.e., a geographic location of the Mobile Communication Devices.

117.    A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is not a staple article or commodity of commerce and that the use of the Location Services functionality of Huawei Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, is for providing call trace information.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

118.    Huawei Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, with Location Services functionality are each a material part of the '572 patent and especially made for the

41

infringing use of the Location Services functionality to receive call trace information, i.e., a geographic location of the Mobile Communication Devices.   The Mobile Communication Devices including the Location Services functionality are especially made or adapted to provide call trace information that perform or facilitate performance of the steps that infringe the '572 patent.   Furthermore, Huawei provides user manuals describing the uses of its products that infringe the '572 patent.   Because the functionality provided by Huawei's Location Services to obtain call trace information, i.e., a geographic location of the Mobile Communication Devices, infringes the '572 patent, Huawei's sales of its infringing products have no substantial non-infringing uses.

119.   Accordingly, a reasonable inference is that Huawei offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.   Huawei provides to others, Mobile Communication Devices, including Huawei M865 MUVE, Huawei MediaPad, and Huawei IDEOS S7 Slim, with an operating system configured and installed by Huawei to support Location Services functionality.   Huawei installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

120.   Huawei's acts of infringement have caused damage to Rockstar and MobileStar.   Rockstar and MobileStar are entitled to recover from Huawei the damages sustained by Rockstar and MobileStar as a result of Huawei's wrongful acts in an amount

subject to proof at trial.  In addition, the infringing acts and practices of Huawei have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

121.    Huawei received actual notice of its infringement of the '551, '937, '298, '973, '131, '591, and '572 Patents through at least letters sent by Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd. and/or Nortel Networks, Inc., to Huawei, and through meetings between employees of Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd., or Nortel Networks Inc. and Huawei.  Huawei also has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

122.    Huawei has willfully infringed and/or does willfully infringe the '551, '937, '298, '973, '131, '591, and '572 Patents.

**DEMAND FOR JURY TRIAL**

Rockstar and MobileStar hereby demand a jury trial for all issues so triable.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Rockstar and MobileStar pray for the following relief:

1.    A judgment that Huawei has directly infringed the '551 Patent, contributorily infringed the '551 Patent, and/or induced the infringement of the '551 Patent.

2.    A judgment that Huawei has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent.

43

3.      A judgment that Huawei has directly infringed the '298 Patent, contributorily infringed the '298 Patent, and/or induced the infringement of the '298 Patent.

4.      A judgment that Huawei has directly infringed the '973 Patent, contributorily infringed the '973 Patent, and/or induced the infringement of the '973 Patent.

5.      A judgment that Huawei has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent.

6.      A judgment that Huawei has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent.

7.      A judgment that Huawei has directly infringed the '572 Patent, contributorily infringed the '572 Patent, and/or induced the infringement of the '572 Patent.

8.      A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '551 Patent;

9.      A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '937 patent;

44

10.     A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '298 patent;

11.     A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '973 patent;

12.     A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '131 patent;

13.     A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '591 patent;

14.     A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '572 patent;

15.     A judgment that Huawei's infringement of the '551, '937, '298, '973, '131, '591, and '572 Patents has been willful;

16.     A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar and MobileStar to its attorneys' fees incurred in prosecuting this action;

17.     A judgment and order requiring Huawei to pay Rockstar and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

18.     A judgment and order requiring Huawei to pay Rockstar and MobileStar the costs of this action (including all disbursements);

19.     A judgment and order requiring Huawei to pay Rockstar and MobileStar pre-judgment and post-judgment interest on the damages awarded;

20.     A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rockstar and MobileStar be awarded a compulsory ongoing licensing fee; and

21.     Such other and further relief as the Court may deem just and proper.

DATED:  October 31, 2013.

Respectfully submitted,
**MCKOOL SMITH, P.C.**

*/s/ Theodore Stevenson, III*
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
**MCKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US,
LP AND MOBILESTAR
TECHNOLOGIES LLC**

47